IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDDIE S. NEAL,                               *

     Plaintiff,                          *

     v.                                  *          Civil Action No. RDB-15-1030

LT. LONNIE W. LUEDTKE, ET AL.,               *

     Defendants.                         *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Eddie S. Neal ("Plaintiff" or "Neal") has brought this action pursuant to 42 U.S.C. § 1983 against Defendants Lieutenant Lonnie W. Luedtke ("Lieutenant Luedtke"), individually and in his official capacity as an Officer of the Crisfield Police Department; Detective Ralph P. Oakes ("Detective Oakes"), individually and in his official capacity as a Detective of the Crisfield Police Department; and the City of Crisfield, Maryland (collectively "Defendants") for "wrongfully and maliciously initiat[ing] an unlawful criminal investigation against [him], outside the jurisdiction of the City of Crisfield," in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Compl. at ¶¶ 1-2, ECF No. 1. Currently pending before this Court is Defendants' Motion to Dismiss, with prejudice, or, alternatively, for Summary Judgment (ECF No. 13).[1] The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6

---

[1] Defendants have clarified in their Reply brief (ECF No. 15) that they "seek dismissal only of Neal's claims of municipal liability under 42 U.S.C. § 1983. As to his Fourth Amendment claim against them, the Detectives [Lieutenant Luedtke and Detective Oakes] are seeking summary judgment based upon the evidentiary record now before the Court." Defs.' Reply, p. 1, ECF No. 15. Therefore, the pending Motion is construed as a Motion to Dismiss Plaintiff's claims against the City of Crisfield, Maryland and as a Motion for Summary Judgment with respect to Plaintiff's claims against Lieutenant Luedtke and Detective Oakes.

(D. Md. 2014).   For the reasons stated herein, Defendants' Motion to Dismiss or, alternatively, for Summary Judgment (ECF No. 13) is GRANTED.   Specifically, Plaintiff's claims against the City of Crisfield, Maryland are DISMISSED WITH PREJUDICE.   With respect to all claims against Defendant Lieutenant Lonnie W. Luedtke, Judgment is entered for Lieutenant Luedtke.   With respect to all claims against Defendant Detective Ralph P. Oakes, Judgment is entered for Detective Oakes.

## BACKGROUND

In ruling on a motion to dismiss, this Court accepts the factual allegations in the complaint as true and construes those facts in the light most favorable to the plaintiff. *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In ruling on a motion for summary judgment, this Court reviews all facts and reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).   The facts of this case construed in the light most favorable to the Plaintiff, the nonmoving party, are as follows:

### I.      Plaintiff's Allegations

Plaintiff Eddie S. Neal ("Plaintiff" or "Neal") resides at 3145 Sackertown Road in Somerset County, Maryland, an address outside the jurisdiction of the City of Crisfield, Maryland and the City of Crisfield Police Department.  Compl. at ¶ 12.  However, he claims to have "had extensive, prior interaction with" Defendants Lieutenant Lonnie W. Luedtke of the Crisfield Police Department ("Lieutenant Luedtke"), Detective Ralph P. Oakes of the Crisfield Police Department ("Detective Oakes"), and the City of Crisfield, Maryland (collectively "Defendants").  *Id.* at ¶ 11.

Between October 28, 2013 and October 29, 2013, Defendants met with an informant outside of their jurisdiction and gave the informant $40.00 "to attempt to purchase illegal drugs from [Neal]." *Id.* at ¶ 15. The informant did not purchase drugs from Neal, but Defendants' investigation continued. *Id.* On October 30, 2014, "Defendants had executed an Application for Search and Seizure Warrant for the residence at 3145 Sackertown Road."[2] *Id.* at ¶ 16. Neal claims that the "only factual reference[] or allegation[]" related to him in that application was "[Lieutenant] Luedtke's contention that he could 'recognize[e] [sic] the voice' of [Neal]." *Id.* However, Neal claims that Luedtke had never spoken with him and only claimed to recognize his voice "because he had spoken to [Neal] in the past . . . while overhearing a phone conversation, from a distance, between the informant and some unknown party." *Id.* Additionally, the application indicated that Neal "was not present at 3145 Sackertown Road when drugs were allegedly purchased" and "[t]he only potentially incriminating allegations contained in the Application and made against [Neal] had nothing to do with the reason they wanted the warrant: according to Defendants, [Neal] allegedly bought drugs at some unknown time, in some unknown quantity, outside their jurisdiction, in the past." *Id.*

On November 7, 2013, police conducted a search of Neal's residence, although Neal was not home at the time. *Id.* at ¶ 17. Neal claims that "[t]he only information obtained directly or indirectly related to [Neal] during the search were statements that [Neal] stayed there on occasion, and [Neal] was not involved in any narcotics distribution." *Id.* Subsequently, Defendants "prepared an application for charges against [Neal] and an arrest

---

[2] The warrant was issued by the District Court of Maryland for Somerset County.

warrant for [Neal] was issued." *Id.* "Defendants prepared an Investigative Report dated November 11, 2013," but Neal claims it was "drafted several months later and back-dated, in anticipation of litigation." *Id.* at ¶ 18. Additionally, Neal claims that "[n]o other law enforcement agency, including the Somerset County Sheriff's Department, had contemporaneous knowledge of the Defendants' investigation." *Id.*

"On November, 19, 2013, [Neal] was indicted on charges of Conspiracy to Distribute Narcotics" and "was held in the Somerset County Detention Center without bond" until the "criminal charges were dismissed by the Circuit Court for Somerset County" on May 28, 2013, 190 days later. *Id.* at ¶ 19. Neal subsequently filed the present lawsuit under 42 U.S.C, § 1983, alleging that "Defendants knew or should have known that their conduct stood in violation of the Fourth and Fourteenth Amendments of the Constitution, as well as clearly established law." *Id.* at ¶ 20. He claims that "Luedtke and Oakes were aware of the boundaries of their jurisdiction and knew at all relevant times that they were exceeding them" and that "[e]ven if Defendants had stayed within their jurisdictional boundaries, they nonetheless knew the investigation was factually unsustainable and should never have been pursued." *Id.* Additionally, he alleges that Defendants "acted under color of law" during their investigation and that their actions were "systemic." *Id.* at ¶ 28.

## II.    Defense Exhibits

In support of their Motion for Summary Judgment, Defendants have entered fifteen exhibits into the record. They have established the following additional facts:

Both Lieutenant Luedtke and Detective Oakes have extensive experience investigating drug trafficking. *See* Warrant App., Def. Ex. 3, p. 2-4, ECF No. 13-6.

Lieutenant Luedtke has been a police officer since 1985, has attended a Multijurisdictional Counter drug Task Force Training and a Drug Intelligence Analysis Training, and has made controlled dangerous substance arrests and executed several search warrants as both a member of the Baltimore Police Department and Somerset County Narcotics Task Force. *Id.* at 2-3.  Detective Oakes has been a police officer since 1993, has made or participated in approximately 2000 narcotics arrests, and has prepared approximately 50 search and seizure warrants for illegal narcotics while assigned to the Baltimore Police Department.  *Id.* at 3-4.

Deputy Gina Tyler of the Somerset County Sheriff's Office first connected Defendants with the informant and knew of Defendants' actions throughout their investigation of Neal.  Luedtke Aff., Def. Ex. 1 at ¶ 2-3, ECF No. 13-4.  Additionally, Defendants informed Deputy Tyler's supervisor, Corporal Geopfert, of their intentions, including the location where the controlled purchases occurred.  *Id.*  Lieutenant Luedtke and Detective Oakes have indicated that Corporal Geopfert gave Deputy Tyler express permission to work on their investigation.  *Id.*  Furthermore, the Office of the State's Attorney was aware of their investigation.  *Id.*

In their Application for a Search and Seizure warrant in this case, Defendants indicated that on October 28, 2013 they had given an informant $40.00 to purchase heroin from Plaintiff.  *See* Warrant App., Def. Ex. 3, p. 5, ECF No. 13-6.  The informant called Neal in Defendants' presence and "made arrangements with Neal to meet at his residence to purchase heroin."  *Id.*  Lieutenant Luedtke recognized Neal's voice on the phone because he has had many conversations with Neal in the past.  *Id.*  The informant later returned to the Defendants with two bags containing a white powder, which a field test confirmed was

heroin.  *Id.*  Defendants repeated this procedure the following day.  *Id.*  Both times, the informant spoke with Neal over the phone, travelled to Neal's home, and returned with two plastic bags containing heroin.  *Id.* at 5-6.  On the second trip, Defendants attached a GPS Tracking Stick to the informant's car, which later confirmed that the informant had travelled to 3145 Sackertown Road, Plaintiff's address.[3]  *Id.*  Neal had a history of drug offenses and the informant indicated that "drug requests are all done via Edward Neal's cell phone."  *Id.* at 6-7.  Having reviewed Defendants' application, Judge Paula R. Price, District Court Judge of the State of Maryland, Somerset County issued a warrant on October 30, 2013, authorizing Defendants to enter Neal's home at 3145 Sackertown Road and search the premises.  *Id.* at 11.  The Maryland State Police Tactical Assault Team Element assisted in executing that warrant.  Oakes Aff., Def. Ex. 2 at ¶ 9, ECF No. 13-5.  Several individuals were at the residence when the warrant was executed.  *Id.* at ¶ 10.  Additionally, officers recovered drugs and drug paraphernalia from the home.  *Id.*

On November 11, 2013, Detective Oakes spoke with the landlord of the home at 3145 Sackertown Road.  *Id.* at ¶ 13.  The landlord stated that the house was rented to Neal.  *Id.*  Subsequently, Neal was charged with several violations of Maryland's Controlled Substance Laws and was arrested.  *Id.* at ¶ 15.  However, Judge Daniel M. Long of the Circuit Court for Somerset County dismissed the charges against Neal on the grounds that Defendants had failed to properly notify the Somerset County Sheriff of their investigation

---

[3] Plaintiff's address at 3145 Sackertown Road has a mailing address in "Crisfield" and it lies in an unincorporated area approximately one mile beyond the City of Crisfield's limits.  Oakes Aff., Def. Ex. 2, at ¶ 5, ECF No. 13-5.

within Somerset County, a territory outside their jurisdiction. *State of Maryland v. Neal*, No. 19-K-13-010250 (Cir. Ct. Somerset Cnty. May 28, 2013) (*see* discussion *infra*).

## STANDARD OF REVIEW

### I.    Motion to Dismiss

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as

facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, ___ F.3d ____, 2015 WL 1088931, *11-12 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*).

## II.    Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences

in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252. The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

<u>ANALYSIS</u>

I.   **Plaintiff has Failed to Plead a Claim of Municipal Liability Under 42 U.S.C. § 1983 and *Monell* Against the City of Crisfield, Maryland**

Pursuant to *Monell v. Dep't of Social Servs. Of City of New York*, 436 U.S. 658 (1978), Section 1983 liability against a local government or municipality may arise when execution of the government's unconstitutional policy or custom causes a plaintiff injury. *See Walker v. Prince George's Cnty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009).   In order to support a claim, "(1) the municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage." *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 210 (4th Cir. 2002) (internal quotation marks omitted). When a plaintiff brings a "custom or usage" claim under *Monell*, the alleged practice must be "so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.' " *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

Plaintiff names the City of Crisfield, Maryland as a Defendant in his Complaint. Compl. at ¶ 1, ECF No. 1.  Additionally, he alleges that Lieutenant Luedtke and Detective Oakes "acted under color of law" during their investigation and that their actions were "systemic."  *Id.* at ¶ 28.  However, he alleges no improper conduct by any other member of the Crisfield Police Department or agent of the City of Crisfield, Maryland and does not claim that any improper conduct occurred outside of the single investigation he details in his Complaint.  These allegations fall far short of "persistent and widespread" misconduct constituting a "custom or usage with the force of law." *See Carter*, 164 F.3d at 217.

Therefore, Defendants' Motion to Dismiss (ECF No. 13) is GRANTED with respect to Plaintiff's claims against the City of Crisfield, Maryland.   Accordingly, Plaintiff's claims against the City of Crisfield, Maryland are DISMISSED WITH PREJUDICE.

## II.   Lieutenant Luedtke and Detective Oakes are Entitled to Qualified Immunity as a Matter of Law

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.*" Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).   In determining whether an officer must be afforded qualified immunity, courts have traditionally engaged in a two-step analysis. *Wilson v. Layne*, 526 U.S. 603, 609 (1999).   First, a court determines whether a constitutional right has been violated.   Second, "assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). The United States Supreme Court has recently modified this approach in order to make it more flexible; courts no longer have to consider the two prongs of the analysis sequentially, but may now review them in the order deemed to be most efficient. *Pearson v. Callahan*, 555 U.S. 223 (2009) ("[t]he judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of

the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

In *United States v. Atwell*, 470 F. Supp. 2d 554 (D. Md. 2007), this Court held that an officer's arrest of an individual outside of his territorial jurisdiction did not, by itself, rise to the level of a constitutional violation. *Atwell*, 470 F. Supp. 2d at 573. Although the United States Court of Appeals for the Fourth Circuit has yet to address this question, this Court in *Atwell* observed that "[t]he majority view, including decisions in the Courts of Appeal for the Seventh and Eighth Circuits, and more recent decisions in the Tenth Circuit, firmly rejects the notion that a lack of state statutory authority to make an arrest constitutes a *per se* violation of the Fourth Amendment." *Id.* (citing *United States v. Mikulski*, 317 F.3d 1228 (10th Cir. 2003); *United States v. Baker*, 16 F.3d 854, 856 n. 1 (8th Cir. 1994); *Pasiewicz v. Lake County Forest Preserve District*, 270 F.3d 520 (7th. Cir. 2001)). "In order to properly assess the reasonableness of an extra-jurisdictional arrest, a court should consider a number of factors." *Id.* The first and primary factor (factor 1) is the "existence of probable cause." *Id.* "Other relevant factors . . . include the degree of the officer's compliance with state law (factor 2); the fact that officers were acting between political subdivisions of the same state (factor 3); the presence of exigent circumstances or the lack thereof (factor 4); the location where the offense or crime originated (factor 5); an officer's knowledge that he was without authority to make an arrest (factor 6); "[an officer's] blatant disregard of state law and the chain of command[;]" (factor 7); the motivation behind the state statute limiting territorial jurisdiction and whether it was designed to protect against unreasonable police behavior (factor 8); and the state's interest in making a particular type of arrest (factor 9)." *Id.* at 574.

i.      **First Factor**

In assessing probable cause, this Court must afford great deference to the initial judicial officer's determination. *United States v. Henry*, 673 F.3d 285, 289–90 (4th Cir. 2012). This Court reviews the known facts and circumstances and determines whether, based upon a common sense determination, there is a fair probability that evidence of a crime will be found. *See, e.g., United States v. Wellman*, 663 F.3d 224, 228 (4th Cir. 2011).   Here, both Lieutenant Luedtke and Detective Oakes have extensive experience investigating drug trafficking.  *See* Warrant App., Def. Ex. 3, p. 2-4, ECF No. 13-6.   In their Application for a Search and Seizure warrant in this case, Defendants indicated that on October 28, 2013 they had given an informant $40.00 to purchase heroin from Plaintiff.  *Id.* at 5.  The informant called Plaintiff in Defendants' presence and "made arrangements with [Plaintiff] to meet at his residence to purchase heroin."  *Id.*  Lieutenant Luedtke recognized Plaintiff's voice on the phone because he has had many conversations with Plaintiff in the past.  *Id.*  The informant later returned to the Defendants with two bags containing suspected heroin.  *Id.* A field test confirmed that the bags did in fact contain heroin.  *Id.*  Defendants repeated this procedure the following day.  *Id.*  Both times, the informant spoke with Plaintiff over the phone, travelled to Plaintiff's home, and returned with two plastic bags containing heroin. *Id.* at 5-6.  On this second trip, Defendants attached a GPS Tracking Stick to the informant's car, which indicated that the informant had travelled to 3145 Sackertown Road, Plaintiff's address.  *Id.*   Additionally, Plaintiff had a history of drug offenses and the informant indicated that "drug requests are all done via [Plaintiff's] cell phone."  *Id.* at 6-7.  Having reviewed Defendants' application, Judge Paula R. Price, District Court Judge of the State of

13

Maryland, Somerset County issued a warrant on October 30, 2013, authorizing Defendants to enter Plaintiff's home at 3145 Sackertown Road and search the premises.  *Id.* at 11.  For these reasons, Defendants had probable cause to enter and search Plaintiff's home. Therefore, analysis under the first factor indicates that no constitutional violation occurred.

### ii.   Second Factor

Analysis under the second factor, the degree of compliance with State law, also suggests that no constitutional violation occurred.  It is undisputed that Md. Code Ann., Criminal Law § 5-802(a)(1) grants officers authority "to investigate and otherwise enforce the Controlled Dangerous Substances laws . . . without any limitation as to jurisdiction." However, whenever this extra-jurisdictional authority is exercised within a "municipal corporation," the investigating officers must provide notification of their actions "to the chief of police or designee of the chief of police."  Md. Code Ann., Criminal Law § 5-802(b)(1).  Defendants believed that they were in compliance with this law because they notified two members of the Somerset County Sheriff's Office of their actions within Somerset County.

Deputy Gina Tyler of the Somerset County Sheriff's Office first connected Defendants with the informant and was kept informed of Defendants actions throughout their investigation of Plaintiff.  Luedtke Aff., Def. Ex. 1 at ¶ 2-3, ECF No. 13-4. Additionally, Defendants informed Deputy Tyler's supervisor, Corporal Geopfert, of their intentions, including the location where the controlled purchases occurred.  *Id.*  Lieutenant Luedtke and Detective Oakes have indicated that Corporal Geopfert gave Deputy Tyler express permission to work with Defendants on this investigation.  *Id.*

14

Despite Defendants' efforts, the Circuit Court for Somerset County Maryland found that the notification requirement had not been met in the present investigation and dismissed the charges against Plaintiff. *See State of Maryland v. Neal*, No. 19-K-13-010250 (Cir. Ct. Somerset Cty. May 28, 2014). However, the Court noted that there was little to no legislative history explaining the meaning of "designee" within the statute. *Id.* at 6. Additionally, neither the Court nor the parties could find judicial precedent to resolve the issue. Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Iko,* 535 F.3d at 238; *see also United States v. Jones,* 428 F. Supp. 2d 497, 503 (W.D. Va. 2006) ("[t]he majority of courts that have considered the issue have concluded that an arresting officer's lack of statutory authority to make an arrest is not a *per se* violation of the Fourth Amendment.") Therefore, this Court's analysis under the second *Atwell* factor establishes that Defendants did not commit a constitutional violation.

### iii.    Third Factor

Analysis under the third factor also suggests no constitutional violation because the Defendants were acting between two political subdivisions within the State of Maryland. In fact, Plaintiff's address at 3145 Sackertown Road has a mailing address in "Crisfield" and it lies in an unincorporated area approximately one mile beyond the City of Crisfield's limits. Oakes Aff., Def. Ex. 2 at ¶ 5, ECF No. 13-5. "Courts have viewed as mitigating if the law enforcement officer acting extra-territorily was simply from another political subdivision within the same state." *Atwell*, 470 F. Supp. 2d at 576 n. 34.

### iv.     Remaining Factors

As with all felony level narcotics violations, there was an exigency in terminating the unlawful conduct being perpetrated at Plaintiff's home.  Additionally, the Circuit Court for Somerset County observed that the Maryland statute governing extra-jurisdictional investigations was "intended [to allow] more liberal enforcement of the C.D.S. laws by allowing for investigations by various law enforcement agencies across the State without being constrained by judicial boundaries."  *Neal*, No. 19-K-13-010250, at *6.  As established above, Defendants did not believe that they were without authority to conduct their investigation, search and seizure, and eventual arrest of Plaintiff.  On the contrary, they had notified multiple members of the Somerset County Sheriff's Department, the State's Attorney's office was aware of their investigation, and the Maryland State Police Tactical Assault Team Element assisted in executing the search of Plaintiff's home.  Therefore, the totality of the *Atwell* factors suggests that a constitutional violation did not occur in this case.

In his Response brief, Plaintiff points to several factual disputes that he claims warrant denial of Defendants' Motion for Summary Judgment.  *See* Pl.'s Response, p. 3-5, ECF No. 14.  Overall, he contends that "[w]hat is disputed before the discovery phase of this litigation, is the factual question of Defendants' motive and intent."  *Id.* at p. 2. However, Defendant misunderstands the qualified immunity analysis.  The question before this Court, as Plaintiff later acknowledges, is whether "a reasonable officer might not have known that the conduct violated [Plaintiff's constitutional rights]."  *Horn v. City of Seat Pleasant*, 57 F. Supp. 2d 219, 226 (D. Md. 1999).  Plaintiff has appended only two exhibits in

response to Defendants' Motion to Dismiss; his own affidavit and the affidavit of his lawyer,

Luke A. Rommel.  In his affidavit, he states:

> I dispute that Defendants acted in good faith.  They have been repeatedly targeting me for a long time.  The only reason I was investigated in this case was because they had dealt with me in the past.  After I filed this lawsuit, on April 1, 2015, Defendants stopped me in my vehicle for no reason, detained me against my will, searched my vehicle without consent, and harassed me because I filed suit against them.  Neal Aff. at ¶ 4, ECF No. 14-2.

Additionally, Plaintiff's lawyer states that "[d]iscovery will be necessary and required

to affirm or rebut the 'facts' cited by Defendants, which are outside the scope of the

Complaint, and including those related to Defendants [sic] motive and intent."  Rommel Aff.

at ¶ 3, ECF No. 14-3.  These bald allegations are insufficient to create a genuine dispute of

material fact.  *See Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted)

("a party cannot create a genuine dispute of material fact through mere speculation or

compilation of inferences.").  Therefore, Defendants Lieutenant Luedtke and Detective

Oakes are entitled to qualified immunity as a matter of law, and Defendants' Motion for

Summary Judgment with respect to all claims against Lieutenant Luedtke and Detective

Oakes is GRANTED.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss or, alternatively, for Summary Judgment (ECF No. 13) is GRANTED.  Specifically, Plaintiff's claims against the City of Crisfield, Maryland are DISMISSED WITH PREJUDICE.  With respect to all claims against Defendant Lieutenant Lonnie W. Luedtke, Judgment is entered for Lieutenant Luedtke.  With respect to all claims against Defendant Detective Ralph P. Oakes, Judgment is entered for Detective Oakes.  A separate Order and Judgment follows.

Dated:        February 29, 2016

_____/s/_____
Richard D. Bennett
United States District Judge